# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| William Cavanagh, on Behalf of Himself and all Others Similarly Situated, | Civil No. _____ |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| JPMorgan Chase Bank, N.A. | JURY TRIAL DEMANDED |
| Defendant. | |

Plaintiff William Cavanagh ("Plaintiff"), individually and on behalf of all others similarly situated, alleges based upon personal knowledge, the investigation of his counsel, information and belief, and publicly available information as follows:

## NATURE OF THE ACTION

1.     This action is brought by Plaintiff, on his own behalf and on behalf of a class of consumers who had their home equity line of credit ("HELOC") with JPMorgan Chase Bank, N.A. ("Chase" or "Defendant") illegally reduced or suspended based on faulty property valuation models or triggering events not allowed by applicable law.

2.     Despite the fact that Chase received approximately $25 billion in a bailout provided to assist homeowners with their mortgages, Chase improperly claimed that homeowners' properties significantly declined in value without a sound factual basis in violation of both Federal and State Law and in breach of an existing contract, so that it could reduce the amount of its outstanding mortgage exposure.

16386

3.      Plaintiff seeks damages and attorneys' fees under Regulation Z of the

Truth-in-Lending Act ("TILA") (15 U.S.C. § 1640(a); 12 C.F.R. § 226.5(b)), equitable

and injunctive remedies, as well as damages, under Minnesota Prevention of Consumer

Fraud Act ("Consumer Fraud Act") (Minn. Stat. § 325F.69, *et seq.*) and Minnesota

Uniform Deceptive Trade Practices Act ("Uniform Deceptive Trade Practices Act")

(Minn. Stat § 325D.44, *et seq.*), and damages for breach of contract.  As detailed below,

in an attempt to limit its exposure to the risk of collapse in the United States housing

market, Chase illegally and deceptively used unreliable automated formulas that were

vulnerable to manipulation, including but not limited to Automated Valuation Models

("AVMs"), to unreasonably undervalue the homes so as to falsely trigger Chase's

purported right to freeze or lower the credit limits of its customers' HELOCs.

Furthermore, rather than applying the federal regulation's interpretation of "significant

decline in value," Defendant created its own arbitrary standards to improperly justify

freezing HELOC accounts or reducing HELOC credit limits.  As a result, Chase reduced

the credit limits and/or froze the HELOC accounts of many homeowners, including

Plaintiff, whose property values had not, in fact, declined significantly, or had not even

declined at all.

## PARTIES

4.      Plaintiff William Cavanagh is a resident of Edina, Minnesota.  In or

around February 2008, Plaintiff obtained a HELOC in the amount of $400,000

secured by his primary residence, which is located in Edina, Minnesota.  In

16386                                         2

approximately January 2009, Defendant sent Plaintiff a letter (Exhibit 1) indicating that it had suspended his line of credit.

5.     Defendant Chase is a national banking association with its main office located at 1111 Polaris Parkway, Columbus, Ohio, 43240.

## JURISDICTION AND VENUE

6.     This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 as this action arises in part under Regulation Z of TILA, 15 U.S.C. § 1647, 12 C.F.R. § 226.5(b).  This Court has supplemental subject matter jurisdiction over the pendent state law claims under 28 U.S.C. § 1367.

7.     In the alternative, the Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(d)(2).  This Complaint alleges claims on behalf of a national class of homeowners who are minimally diverse from Defendant.  On information and belief, the aggregate of these claims exceeds the sum or value of $5,000,000.

8.     Venue is proper in this federal judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events, circumstances, and omissions giving rise to these claims occurred in this District.

## CLASS ACTION ALLEGATIONS

9.     Plaintiff brings this action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following Class:

>      All persons in the United States who had a HELOC with
>      Chase, secured by real property, which was reduced or
>      suspended by Chase, based on faulty valuation models or
>      triggering events not allowed by law which reduction or

16386

freezing was due to a substantial decline in the value of the property securing the HELOC.

10.    Plaintiff also brings this Complaint against Defendant on behalf of a notice subclass (the "Notice Subclass") consisting of:

> All Class Members in the United States who received from Chase the "Important Notice About Your Home Equity Line of Credit" and FAQ.

11.    Excluded from the Class and the Notice Subclass is the Defendant and its respective parents, subsidiaries, and affiliates, any judge or magistrate presiding over this action and members of their families, as well as any governmental entities.

12.    Plaintiff does not know the exact size of the Class since such information is exclusively in the control of Defendant.   Plaintiff believes that there are thousands of Class members, and that they are sufficiently numerous and geographically dispersed throughout the United States so that joinder of all Class members is impracticable.

13.    Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and all Class members were damaged by the same wrongful conduct of Defendant as alleged in this Complaint.

14.    Plaintiff will fairly and adequately protect the interests of the Class.  The interests of Plaintiff coincide with and are not antagonistic to those of the Class.  In addition, Plaintiff is represented by counsel who are experienced and competent in the prosecution of complex consumer class action and complex class action litigation.

15.    There are questions of law and fact common to the members of the Class, and those common questions predominate over any questions which may affect only

16386

4

individual members of the Class, because Defendant has acted on grounds generally applicable to the entire Class.  Among the predominant questions of law and fact common to the Class are:

    a.  Whether Defendant's criteria for reducing HELOC credit limits, methods for valuing home values securing HELOCs, and ultimate reduction of HELOC limits violated Regulation Z;

    b.  Whether Defendant's reduction of the credit limits breached the terms of its HELOC agreements;

    c.  Whether Defendant gave lawful and fair notice to customers that their HELOCs were being reduced and the specific reasons for such reductions;

    d.  Whether Defendant's actions in requiring borrowers to obtain and pay upfront for appraisals violates an implied covenant of good faith and fair dealing;

    e.  Whether Defendant's actions violate the Consumer Fraud Act and the Uniform Deceptive Trade Practices Act;  and

    f.  Whether Plaintiff and the Class members are entitled to relief, and the nature of such relief.

16.    Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence,

16386

effort, and expense that numerous individual actions would engender.  The benefits of

proceeding through the class mechanism, including providing injured persons or entities

with a method for obtaining redress for claims that might not be practicable to pursue

individually, substantially outweigh any difficulties that may arise in management of this

class action.  There are no difficulties likely to be encountered in the management of this

class action that would preclude its maintenance as a class action and no superior

alternative exists for the fair and efficient adjudication of this controversy on behalf of

Plaintiff and the members of the Class.

## SUBSTANTIVE ALLEGATIONS

**A.      Facts Common to the Class**

17.     Each member of the Class had a HELOC for which Chase illegally

reduced the available credit.

18.     On information and belief, in approximately January 2009, Defendant

sent form letters to thousands of its HELOC customers, including Plaintiff (Exhibit 1)

and Class members, summarily lowering or suspending their lines of credit, stating in

substance:

> With home values falling in many parts of the country,
> we've used a proven valuation method to estimate your
> home's value at [estimated value].   Unfortunately, that
> valuation no longer supports the full amount of your Line
> of Credit, so we are suspending future draws against your
> account as of [suspension date].

19.    The letter did not disclose the methodology used to compute the decline in home value.  Rather, on a second page for "Frequently Asked Questions" (Exhibit 2) the letter stated:

> Q:    Why did Chase take this action at this time?
>
> A:    We are doing everything we can to keep homeowners from owing more than their home is worth, especially as home values in many areas of the country are falling.  Your property's value no longer supports your full Home Equity Line of Credit.
>
> Q:    How did you get the new value for my home?  I have not met with an appraiser from Chase.
>
> A: We used an industry standard method to value your property that did not require an appraiser to enter your home. We have confidence that our valuation for your property is accurate.  If you disagree and feel that your home value has not declined please see below for our appeal process.

20.    Chase lacked a sound factual basis for sending these letters and reducing or freezing their customers' HELOC limits.  Defendant knowingly, illegally and intentionally used unreliable and easily manipulated AVMs to unreasonably undervalue Class members' homes so as to falsely trigger Chase's right to freeze their accounts or lower their credit limits.

21.    Furthermore, although federal regulators have interpreted "significant decline in value," Defendant failed to rely on that definition and instead used its own standards to improperly justify freezing Class members' HELOC accounts or reduce their credit limits.

16386

22.     The Federal Deposit Insurance Corporation ("FDIC") issued a "Financial Institution Letter" dated June 26, 2008 to institutions concerning suggested best practices when changing credit limits.  The suggested best practices included the following statement:  "institutions should have a sound factual basis for determining that a property has experienced a significant decline in value."

23.     The FDIC suggested best practices also warned lenders to "ensure that any reductions or suspensions of HELOC limits do not violate the FTC Act 5 prohibition against unfairness and deception."[1]

24.      Chase purposely used unreliable automated formulas that were vulnerable to manipulation and unsound and untested AVMs to unreasonably undervalue the homes so as to falsely trigger Chase's purported right to freeze or lower the credit limits of its customers' HELOCs.

25.     As a result, Defendant violated federal law by reducing the credit limits and/or freezing the HELOC accounts of many homeowners, including Plaintiff and the Class, whose property values had not, in fact, declined significantly, thereby prohibiting borrowers access to funds which they expected to be available.

26.     Defendant's HELOC reductions are not only illegal, they are unconscionable.  On October 3, 2008, Congress passed the Emergency Economic Stabilization Act of 2008, Pub. L. No. 110-343.  Pursuant to this act, Chase obtained approximately $25 billion from an unprecedented $700 billion bailout funded entirely

---

[1]  Guidance on Unfair or Deceptive Acts or Practices issued as a Financial Institution Letter at FIL-57-2002, May 30, 2002.  See http://www.fdic.gov/news/news/financial/2002/fil0257.html.

by American taxpayers.

27.     Despite Defendant's statements to Congress to the contrary, Defendant has intentionally failed to meet its obligations to its customers and has intentionally deprived those customers of crucial affordable consumer credit at a critical time.

28.     In stark contrast, Defendant's HELOC borrowers such as Plaintiff continue to struggle to meet their mortgage obligations, despite a faltering economy and Defendant's wrongful acts.  As a result of these wrongful acts, Class members have incurred appraisal fees, an increased price of credit and reduced credit scores, lost interest, and statutory and other damages.

**B.     Facts Regarding William Cavanagh**

29.     In or around February 2008, Defendant Chase and Plaintiff entered into a HELOC agreement under the terms of which Chase provided Cavanagh with a $400,000 line of credit secured by a mortgage on his primary residence.  On information and belief, Chase's valuation of the subject matter property at the time the HELOC was granted was $950,000.

30.     Plaintiff's HELOC agreement (Exhibit 3) contained the following provision:

> Term.  The term of your Credit Line will begin as of the date of this Agreement ("Opening Date") and will continue until February 22, 2038 unless extended pursuant to the Extended Lock Option described below ("Maturity Date"). All indebtedness under this Agreement, if not already paid pursuant to the payment provisions below, will be due and payable upon maturity.  The draw period of your Credit Line will begin on a date, after the Opening Date, when the Agreement is accepted by us in the State of Ohio, following

16386

9

the expiration of the right to cancel, the perfection of the Mortgages, the receipt of all required certificates of noncancellation, and the meeting of all of our other conditions and will continue as follows: ten (10) years unless extended pursuant to the Extended Lock Option described below. The Draw Period is also referred to as the "First Payment Stream." You may obtain credit advances during this period ("Draw Period"). After the Draw Period ends, the repayment period will begin and you will no longer be able to obtain credit advances. The length of the repayment period is as follows: twenty (20) years. The length of the repayment period for the revolving portion of your Credit Line is 20 years. The length of the repayment period for any Lock you select is dependent upon the terms of that specific Lock. The Repayment Period is also referred to as the "Second Payment Stream." You agree that we may renew or extend the period during which you may obtain credit advances or make payments. You further agree that we may renew or extend your Credit Line Account.

\*        \*        \*

Credit Limit. This Agreement covers a revolving line of credit for the principal amount of Four Hundred Thousand & 00/100 Dollars ($400,000), which will be your "Credit Limit" under this Agreement. During the Draw Period we will honor your request for credit advances subject to the section below on Lender's Rights. You may borrow against the Credit Line, repay any portion of the amount borrowed, and re-borrow up to the amount of the Credit Limit.

\*        \*        \*

Lender's Rights. Under this Agreement, we have the following rights:

\*        \*        \*

Suspension or Reduction. In addition to any other rights we may have, we can suspend additional extensions of credit or reduce your Credit Limit during any period in

which any of the following are in effect:

(1)    The value of your property declines significantly below the property's appraised value for purposes of this Credit Line Account. This includes, for example, a decline such that the initial difference between the Credit Limit and the available equity is reduced by fifty percent and may include a smaller decline depending on the individual circumstances.

Defendant drafted these agreements, which contemplate on their face triggering events that are contrary to those set forth in Regulation Z.

31.    In or around January 2009, Chase mailed Plaintiff a letter (Exhibit 1) indicating that it was "suspending future draws" against Plaintiff's HELOC as of January 10, 2009. The letter stated that this decision was based on "a proven valuation method [used] to estimate your home's value at $736,290." No further explanation or rationale for this statement was provided.

32.    Following the notice, Plaintiff contacted Defendant's customer service representatives seeking the basis for the decision to reduce his HELOC credit limit.

33.    Following unsuccessful attempts to have his HELOC reinstated, Plaintiff was forced to hire his own property appraiser at his own expense and was able to prove that his home had not decreased in value, and in fact the value of his home had actually *increased*. Consequently, Chase reinstated Plaintiff's HELOC. Subsequent to hiring his own appraiser, demonstrating to Chase that his property value had increased, Plaintiff was forced to pay for that appraisal out of his own pocket, for which he was not fully reimbursed.

16386

34.     In addition, Plaintiff's HELOC with Defendant is his primary line of credit.  He was unable to use that line of credit for several months, and consequently lost the time value of those funds.

35.     Furthermore, Defendant's reduction of the credit limit on Plaintiff's HELOC increased the ratio of credit Plaintiff used to the amount of credit he had available.  In turn, on information and belief, Defendant's acts drove up Plaintiff's Credit Utilization Rate ("CUR"), a major component of his credit rating, damaging Plaintiff's credit rating and increasing the cost of credit to him.

**FIRST CLAIM FOR RELIEF**
**FOR DECLARATORY RELIEF UNDER TILA AND REGULATION Z**
**(ON BEHALF OF PLAINTIFF AND THE CLASS)**

36.     Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

37.     Plaintiff alleges on information and belief that Defendant used a valuation methodology that was flawed in that Defendant or its agents, acting under Defendant's direction and control, failed to, among other acts or omissions: (1) accurately represent the value of the property at the origination of the HELOCs, the value necessary to reinstate the HELOCs, and the reasoning behind the use of those values; (2) validate their AVMs on a periodic basis to mitigate the potential valuation uncertainty; (3) properly document the validation's analysis, assumptions, and conclusions; (4) appropriately back-test representative samples of the valuations against market data on actual sales; (5) account fairly for improvements, property type

16386                                                12

or geographic comparables; and (6) take other necessary steps to reasonably verify the accuracy of the valuations.

38.     Furthermore, Defendant violated TILA and Regulation Z by reducing Plaintiff's HELOC limit in the absence of a "significant decline" in the value of his home.

39.     Plaintiff and the other members of the Class have additionally been harmed because Defendant knowingly provided late notice, and knowingly failed to disclose information that would permit Plaintiff and the Class members to fairly determine whether to obtain an appraisal or otherwise challenge the Defendant's action, including but not limited to:

    a.  how Defendant determines or define "decline in value";

    b.  how Defendant computes the value of the properties;

    c.  the actual threshold value required for reinstatement and Defendant's methods for computing that value;

    d.  Defendant's actual and specific reasons for the reduction of the HELOCs;

    e.  The process, procedures, and guidelines pursuant to which Defendant implemented its reduction/cancellation of the HELOCs; and

    f.  other necessary and material information.

40.     The Class and Defendant have adverse legal interests, and there is a substantial controversy between the Class and Defendant of sufficient immediacy and reality to warrant the issuance of a declaratory judgment as to whether Defendant's

16386

mass reduction of credit limits violates TILA and Regulation Z.

41.     Plaintiff, on his own behalf and on behalf of all Class members, seeks a declaratory judgment under 27 U.S.C. § 2201 that Defendant's mass reduction of HELOC credit limits violates TILA and Regulation Z.

**SECOND CLAIM FOR RELIEF**
**VIOLATION OF TILA AND REGULATION Z**
**(ON BEHALF OF PLAINTIFF AND THE CLASS)**

42.     Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

43.     Defendant knowingly lacked a sufficient factual basis for reducing Plaintiff's and the Class's credit limits or prohibiting additional extensions of credit. Defendant lacked a sound factual basis for concluding the homes securing the HELOCs for Plaintiff and the Class had declined in value so as to support reducing the credit limits or prohibiting additional extensions of credit. Defendant also used improper formulas and triggering events for determining when such a "significant decline" had occurred.

44.     Defendant's reduction of the credit limits for Plaintiff's and the Class's HELOCs violated TILA and Regulation Z.

45.     Defendant's violations of TILA and Regulation Z damaged Plaintiff and the Class. These damages occurred in the form of the increased price of credit, adverse effects on credit scores, loss of interest income, and statutory and other damages.

46.     Plaintiff, on his own behalf and on behalf of all Class members, seeks statutory damages under 15 U.S.C. § 1640(a)(2) (B), and costs of the action, together with reasonable attorneys' fees under 15 U.S.C. § 1640(a)(3).

### THIRD CLAIM FOR RELIEF
### VIOLATION OF TILA AND REGULATION Z
### (ON BEHALF OF PLAINTIFF AND THE NOTICE SUBCLASS)

47.     Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

48.     On information and belief, Defendant provided Plaintiff and the members of the Notice Subclass with notice of their HELOC reductions that was untimely and/or that did not contain specific reasons for the action in violation of 12 C.F.R. § 226.9(c)(1)(iii), which states:

> Notice for home equity plans. If a creditor prohibits additional extensions of credit or reduces the credit limit applicable to a home equity plan pursuant to § 226.5b(f)(3)(i) or § 226.5b(f)(3)(vi), the creditor shall mail or deliver written notice of the action to each consumer who will be affected. The notice must be provided not later than three business days after the action is taken and shall contain specific reasons for the action. If the creditor requires the consumer to request reinstatement of credit privileges, the notice also shall state that fact.

49.     The notice failed to provide HELOC customers with enough information to determine whether they should spend the time and resources to get an appraisal. Despite the fact that the customers' HELOC agreements and federal law require a "significant decline in collateral value" prior to prohibiting additional extensions of credit or reducing the credit limit, the notice was devoid of any specific reasoning

16386

beyond there being a general "decline in value" based on an "industry standard method."  The notice did not reveal how Defendant determined or defined "decline in value," how Defendant computed the value of the subject matter homes, the threshold value for reinstatement, or Defendant's methods for computing that value.  Instead, the notice required customers to participate in an unfair appeals process wherein Defendant refused to make clear the values needed for reinstatement, or the method or basis for determining those values in the first instance, requiring instead that debtors retain their own assessors for which they have not been fully reimbursed.

50.     Defendant's violations of TILA and Regulation Z damaged Plaintiff and the other Notice Subclass members.  These damages occurred in the form of the increased price of credit, adverse effects on credit scores, loss of interest income, and statutory and other damages.  Plaintiff, on his own behalf and on behalf of all Notice Subclass members, seeks actual damages under 15 U.S.C. § 1640(a)(1), statutory damages under 15 U.S.C. § 1640(a)(2)(B), and costs of the action, together with a reasonable attorneys' fee under 15 U.S.C. § 1640(a)(3).

## FOURTH CLAIM FOR RELIEF
### BREACH OF CONTRACT
### (ON BEHALF OF PLAINTIFF AND THE CLASS)

51.     Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

52.     Plaintiff and the Class obtained HELOCs from Defendant.  The terms of these HELOCs constitute a contract between the Class members and Defendant.

53.     Plaintiff and the other Class members made all payments due to Defendant in a timely manner and otherwise fully performed under their HELOCs with Defendant.

54.     The credit limit under the Class members' HELOCs was a material term of the contract between Class members and Defendant.

55.     Defendant materially breached the terms of the HELOCs by reducing the credit limit for Plaintiff's and the Class members' HELOCs where no significant decline in value had first occurred.

56.     As a result, Plaintiff and the Class have suffered damages in the form of the appraisal fees, the increased price of credit, lost interest income, attorneys' fees, adverse effects on Plaintiff's credit score, and statutory and other damages.

57.     Plaintiff, on his own behalf and on behalf of all Class members, seeks damages for Defendant's breach of contract, as well as interest and attorneys' fees and costs.

## FIFTH CLAIM FOR RELIEF
### BREACH OF IMPLIED COVENANTS
### (ON BEHALF OF PLAINTIFF AND THE CLASS)

58.     Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

59.     Plaintiff and the Class obtained HELOCs from Defendant.  The terms of these HELOCs constitute a contract between the Class members and Defendant.

60.     Implicit in the HELOC agreements were contract provisions that prevented the Defendant from engaging in conduct which frustrates the Class

16386

members' rights to the benefits of the contract or which would injure the right of the Class members' to receive the benefits of their HELOCs.

61.     The credit limit was a material term of the Class members' HELOCs. Defendant breached the implied covenant of good faith and fair dealing in the HELOCs by reducing the credit limit for Plaintiff and the Class members' HELOCs without first having a sound factual basis for claiming there was a decline in value.

62.     Defendant further breached the implied covenant of good faith and fair dealing to the Notice Subclass by failing to provide sufficiently specific notice and by failing to provide customers with material information regarding the calculations and values used to justify the reductions or freezes.

63.     Implicit in the HELOC agreements were contract terms that required Defendant to follow Regulation Z.

64.     Defendant's breach of Regulation Z and the HELOC covenants caused Plaintiff and the Class to incur damages in the form of appraisal fees, the increased price of credit, adverse effects on Plaintiff's credit score, and statutory and other damages.

65.     Plaintiff, on his own behalf and on behalf of all Class members, seek damages for Defendant's breach of the implied covenant of good faith and fair dealing, as well as interest and attorneys' fees and costs.

## SIXTH CLAIM FOR RELIEF
## UNJUST ENRICHMENT/RESTITUTION
## (ON BEHALF OF PLAINTIFF AND THE CLASS)

66.     Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

67.     In the alternative, and in the event this Court finds that no contract provision expressly governs the issues raised herein, Defendant has knowingly received and retained benefits from Plaintiff and the Class under circumstances that would render it unjust to allow Defendant to retain such benefits.

68.     By using inaccurate and unsubstantiated valuation models, and by using "triggering events" that fall outside those permitted by Regulation Z to reduce the HELOCs while requiring Plaintiff and members of the Class and Subclass to obtain appraisals at their own expense and for which they were never fully reimbursed to reinstate the HELOCs, Defendant knowingly received and appreciated the benefits of current appraisals on homes in which they have security interests under circumstances where it would be unjust for Defendant not to bear the full cost of the appraisals.

69.     Furthermore, Defendant charged closings costs and related fees based on the original credit limit, which Defendant failed to honor. Consequently, Defendant has been unjustly enriched by the excess closing costs, points, and other fees charged to Plaintiff and the Class.

70.     Finally, by illegally freezing and reducing the HELOCs, Defendant gained the time value of the money it would otherwise be potentially liable for lending out to its HELOC customers.

16386

71.     As an actual and proximate result of Defendant's conduct, Plaintiff and

the Class members have incurred damages in the form of appraisal fees, the increased

price of credit, adverse effects on their credit score, and statutory and other damages.

72.     Plaintiff, on his own behalf and on behalf of all Class members, seeks

restitution of the benefit unjustly received from Plaintiff and members of the Class, as

well as interest, attorneys' fees, and costs.

**SEVENTH CLAIM FOR RELIEF**
**VIOLATION OF MINNESOTA PREVENTION OF CONSUMER**
**FRAUD ACT, MINN STAT. § 325F.69**
**(ON BEHALF OF PLAINTIFF AND THE CLASS)**

73.     Plaintiff incorporates by reference all the above allegations as if fully set

forth herein.

74.     Minn. Stat. § 325F.69, subdivision 1 (2008) provides:

> The act, use, or employment by any person of any fraud, false
> pretense, false promise, misrepresentation, misleading
> statement or deceptive practice, with the intent that others
> rely thereon in connection with the sale of any merchandise,
> whether or not any person has in fact been misled, deceived,
> or damaged thereby, is enjoinable as provided in section
> 325F.70.

75.     The term "merchandise" within the meaning of Minn. Stat. § 325F.69

includes loans. *See* Minn. Stat. § 325F.68, subdivision 2 (2008).

76.     Defendant's conduct described herein constitutes multiple, separate

violations of Minn. Stat. § 325F.69, subdivision 1. Defendant has engaged in

deceptive and fraudulent practices, and made false and misleading statements, with the

intent that Plaintiff and others rely on them in connection with the sale of Defendant's

16386

services.  By failing to disclose and omitting material facts, Defendant has further

engaged in deceptive and fraudulent practices in violation of the Consumer Fraud Act,

and has caused Plaintiff and the Class damages.

77.     Plaintiff and the Class have suffered adverse effects to their credit

scores, attorneys' fees, and statutory and other damages.

78.     Plaintiff, on his own behalf and on behalf of all Class members, seeks

an order pursuant to the Consumer Practices Act preliminarily and permanently

enjoining Defendant's deceptive and fraudulent practices alleged herein and

requiring Defendant to restore HELOC credit limits and cease freezing HELOCs in

violation of Regulation Z, as well as individual restitution of property gained by such

deceptive and fraudulent practices, interest, attorneys' fees, and costs.

## EIGHTH CLAIM FOR RELIEF
### VIOLATION OF MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT, MINN. STAT. § 325D.44
### (ON BEHALF OF PLAINTIFF AND THE NOTICE SUBCLASS)

79.     Plaintiff incorporates by reference all the above allegations as if fully set

forth herein.

80.     Minn. Stat. § 325D.44, subdivision 1 (2008) provides, in part:

> A person engages in a deceptive trade practice when, in the
> course of business, vocation, or occupation, the person:

> \*       \*       \*

> (5) represents that goods or services have . . . characteristics
> …[or] benefits . . . that they do not have . . .

> \*       \*       \*

16386

(7) represents that goods or services are of a particular standard, quality, or grade . . . if they are of another;

\*     \*     \*

(9) advertises goods or services with intent not to sell them as advertised;

\*     \*     \*

(13) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

81.    Defendant's conduct described above constitutes multiple, separate violations of Minn. Stat. § 325D.44, subdivision 1.  Defendant has engaged in deceptive practices by representing that services have characteristics and benefits that they do not have; representing that services are of a particular standard, quality, or grade when they are of another; advertising services with intent not to sell them as advertised; and engaging in other conduct which similarly creates a likelihood of confusion or of misunderstanding.  In failing to disclose and omitting material facts, Defendant has further engaged in deceptive and fraudulent practices in violation of the Uniform Deceptive Trade Practices Act, and has caused Plaintiff and members of the Class damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment and orders in their favor and against Defendant as follows:

A. Certifying the action as a class action and designating Plaintiff and his counsel as representative of and counsel for the Class and Subclass;

16386

22

B. Declaratory judgment under 27 U.S.C. § 2201 on Count I that the Defendant's HELOCs reductions violate federal law;

C. Statutory damages under 15 U.S.C. § 1640(a)(2)(B) for Count II;

D. Actual damages for the Subclass on Counts III, V, VI and VIII, including but not limited to appraisal fees, the increased price of credit, attorneys' fees, interest, and other damages in an amount to be proved at trial;

E. Actual damages on Counts II, IV, V, VI and VII for the Class including but not limited to appraisal fees, the increased price of credit, attorneys' fees, interest, and other damages in an amount to be proved at trial;

F. Preliminary and permanent equitable and injunctive relief for the Class, including enjoining the Defendant from further violations of Regulation Z and restoration of HELOC credit limits;

G. Preliminary and permanent equitable and injunctive relief for the Notice Subclass, including enjoining the Defendant from further violations of Regulation Z, and restoration of HELOC credit limits restitution of property gained by the unfair competition alleged herein, and an order for accounting of such property;

H. Awarding pre- and post judgment interest; and

I. Granting such other and further relief as the Court may deem just and proper.

16386

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all issues so triable.

Dated: November 25, 2009                 s/Daniel E. Gustafson       
                                        Daniel E. Gustafson (#202241)
                                        (dgustafson@gustafsongluek.com)
                                        Jason S. Kilene (#24773X)
                                        (jkilene@gustafsongluek.com)
                                        James W. Anderson (#337754)
                                        (janderson@gustafsongluek.com)
                                        **GUSTAFSON GLUEK, PLLC**
                                        650 Northstar East
                                        608 Second Avenue South
                                        Minneapolis, MN 55402
                                        Telephone: (612) 333-8844
                                        Facsimile: (612) 339-6622

                                        Jacqueline Sailer
                                        (jsailer@murrayfrank.com)
                                        Lee Albert
                                        (lalbert@murrayfrank.com)
                                        Brian D. Brooks
                                        (bbrooks@murrayfrank.com)
                                        **MURRAY, FRANK & SAILER LLP**
                                        275 Madison Avenue, 8th Floor
                                        New York, New York 10016
                                        Telephone: (212) 682-1818
                                        Facsimile:  (212) 682-1892

                                        *Counsel for Plaintiff*

16386